Ford v. Dyer.

Ford v. Dyer, Appellant.

### Division Two, March 7, 1899.

1. **Contract**: PATENT RIGHT: HOW RESCINDABLE. A contract giving the purchaser the right to sell certain machines on which a patent had been issued, which passed the patentee's right of sales in certain territory on its execution, and the title to the machines on their delivery, could be rescinded, in the absence of fraud, only in the manner and within the time prescribed by the contract.

2. ———: ———: ———: CLEARLY DONE. In order that such a contract may be rescinded, where the option is given therein to rescind within one year, the intention to do so must be clearly and unequivocally expressed.

3. ———: ———: ———: ———: EXTENSION OF TIME. A letter asking for an extension of time in order to test the value of a contract, which contained an option to rescind within a year, is inconsistent with the idea that defendant intended by that letter to cancel the contract.

4. ———: LETTERS: INTERPRETATION: INSTRUCTION. Instructions submitting the interpretation of a contract or of letters offered to show that the contract had been rescinded, should not be submitted to the jury. The interpretation of written instruments is a matter for the court.

5. ———: INTERPRETATION: FAILURE TO GIVE BOND. A contract provided that the owner of a patent right should give bond for $2,500 that he would return to the purchaser the money paid by him for all machines returned, in case the contract was rescinded by the purchaser within one year. *Held*, that a failure to give the bond within the year, did not rescind the contract, nor was the giving of the bond a condition precedent to plaintiff's right to recover on the contract after the year had expired without the exercise of the option by the purchaser.

6. ———: PEREMPTORY INSTRUCTION FOR PLAINTIFF. Plaintiff sued for the purchase price of certain machines, and for $2,500 for territorial rights of exclusive sales under a patent during its life. The price of the machines was set out in the contract, as was the other item, and defendant admitted that he had received and still retained the machines, but contended that under a proper interpretation of the contract plaintiff ought not to recover. *Held*, that, no evidence having been introduced showing a cancellation of the contract, the court properly instructed the jury to find for plaintiff.

*Appeal from St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

AFFIRMED.

JOHN W. KERR and CARTER & SAGER for appellant.

(1) The agreement made no absolute contract for the sale of the machines. The agreement made no absolute contract for the sale of the territory, or the use of the patents therein. Nothing was created by the agreement, more than an experimental option for one year, during which time, the defendant might experiment, at his own expense, on the machines in the territory. (2) The sending of the letter dated September 20, 1895, and October 9, and the same being received by plaintiff, ended the option, by act of defendant under the terms of the agreement. (3) The agreement being merely an experimental option, either party could withdraw at any time. (4) No money was to be paid to plaintiff, until he gave bond in the sum of $2,500, and by neglecting or refusing to give such bond, he virtually withdrew the option. Klee v. Grant, 23 N. Y. Sup. 855. (5) The court rejected competent evidence going to show that the defendant had withdrawn from the agreement, before the end of the year. Mayer v. Allison, 109 Ill. 180; Johnson Co. v. Wood, 84 Mo. 489; Callaway v. Henderson, 130 Mo. 77; Ellerbe v. Barney, 119 Mo. 632; Webb v. Protection Ins. Co., 14 Mo. 5; Carter v. Arnold, 134 Mo. 195;

VOL. 148 mo—34

Belch v. Miller, 32 Mo. App. 387; Schickle v. Chouteau, Harrison & Valle, I. Co., 10 Mo. App. 241; Bank v. Haywood, 62 Mo. App. 550; Carney v. Chillicothe Water Co., 16 Mo. App. 577; Wharton on Contract, secs. 657-662.

GEORGE E. SMITH and JOHNSON, HOUTS & MARLATT for respondent.

(1) The title to the territory passed upon its execution, and the title to the machines passed upon delivery, subject only to the right of the vendee to rescind the sale within the time and in the manner stipulated. The contract falls within that class of conditional sales known to the law as "sale or return." The purchaser can sell and convey good title to the goods, either within the time fixed for his election, or afterwards. The seller can not maintain replevin for the goods, either before or after the time given the purchaser to rescind the sale. His only remedy, if the condition has not been complied with, is a suit against the vendee for the price. Prairie Farmer Co. v. Taylor, 69 Ill. 440; Dewey v. Erie Borough, 14 Pa. St. 211; Jameson v. Gregory, 4 Metc. (Ky.) 363; Dearborn v. Turner, 16 Me. 17; Waters Heater Co. v. Mansfield, 48 Vt. 378; McKinney v. Bradlee, 117 Mass. 321; Spickler v. Marsh, 36 Md. 222. (2) The letter of September 20, 1895, pleaded in the answer, and offered in evidence to show notice of defendant's election to annul and cancel the contract, was properly excluded. Being a written instrument offered by defendant to show notice within the terms of the contract sued on, it was for the court to determine whether or not it tended to show such notice. The letter was, in effect, an application for an extension of time. Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 335. (3) At the close of the evidence there was nothing for the jury to pass on. The defendant had at the trial admitted that he had received and still retained possession of all the machines sued for in the first count of

the petition. The price he was to pay was fixed by the contract, and his admission in regard to the machines claimed in the petition, where the number, size and price were specifically itemized precluded dispute on those points. The price he was to pay for the territory at the end of the year, was also fixed by the contract. He had failed to prove a rescission of the contract within the year. There was no evidence or issue of fact left to be submitted to a jury. The court, therefore, properly gave the peremptory instruction to find for the plaintiff the full amount claimed in the first count of the petition. Wolff v. Campbell, 110 Mo. 114.

BURGESS, J.—This is an action for damages for the breach of a written contract entered into between plaintiff and defendant on the twentieth day of November, 1894.

Plaintiff, having the right and privilege to dispose of state or territorial rights, to make, vend and deal in a certain kind of "gas regulator" and "gas governor" under patents numbers 367,801 and 498,543, by virtue of certain letters patent issued to him out of the patent office of the United States, entered into a written contract with defendant, substantially as follows:

"The party of the first part (Archibald Ford) does hereby bargain and sell, assign, grant and convey to the party of the second part, his heirs and assigns, the exclusive right to sell, rent and use the said regulator and governor, device and contrivance, together with all alterations, improvements and renewals that may be made thereon or thereof, in the city and county of Saint Louis, Missouri, with the further privilege, concurrent with the said party of the first part, but not exclusive, of selling, renting and using the same in the State of Missouri, excepting the cities of Kansas City and Saint Joseph, for the whole time or term of the life of said patents and any alterations, improvements and renewals thereof or thereon that may hereafter be made.

"All regulators, governors, machines and devices are to be paid for on their delivery in Saint Louis, Missouri, freight to be paid by said second party, at the following prices:

    5 Light Regulators.......................$2.25 each
    10 Light Regulators........................ 3.25 each
    20 Light Regulators........................ 4.25 each
    45 and 60 Light Regulators.................. 5.25 each
    80 and 100 Light Regulators..................8.00 each
    150 and 200 Light Regulators...............:..10.00 each
    250 and 300 Light Regulators................12.00 each

"A reduction and allowance of ten per cent shall be allowed on said prices, but no payment shall be demanded or due and payable on said machines until the bond herein set forth is executed and delivered to said second party, his heirs and assigns. The party of the first part agrees to furnish all the machines ordered by said second party and deliver them in Saint Louis within fifteen days from receipt of said order, or as soon as possible thereafter, to any amount or number that may be required and ordered by said second party he paying freight.

"If desired, the party of the first part, shall furnish the services of B. B. Coleman or a Mr. Irwin or some other competent person skilled in the business, to superintend the working and placing of the machines and using the same, the party of the second part to pay said person in full for his services the sum of seventy-five dollars per month for the time so occupied by him. The first party agrees that no machines under or of the Ford patent shall be sold, used or rented in the territory of the city and county of Saint Louis, in which said second party has the exclusive right. It is expressly agreed that if at any time within one year from the date hereof the party of the second part may notify the party of the first part, by a letter postpaid and directed to Archibald Ford, Oakland, California, and placed in the postoffice in Saint Louis, Mo., of his election to annul or cancel this

contract, it shall stand canceled, it being the object hereof to give the party of the second part an experimental option for the space of one year to test the value and working of said machine. In the event that within one year from the date hereof said second party signifies in the manner aforesaid his election to annul this contract, and not to proceed further thereunder, the party of the first part shall forthwith pay and refund to him all the moneys paid for machines or devices up to that date, and the party of the second part shall promptly turn over to the first party, he having performed his part hereof, all machines or devices including the fittings and quick-silver therein at the time. It being however understood that none of said machines shall be sold till said second party elects to take said territory, and money actually paid shall be accounted for at the price paid said first party for said machines, and all other moneys collected shall be retained by said second party. After such notice and accounting, the whole contract shall cease and each party shall stand fully discharged. It is expressly understood and the party of the first part agrees to forthwith furnish and deliver to said second party, a bond in the sum of $2,500, or more if necessary, to refund to him promptly all moneys paid for machines on demand in case of election to rescind this contract above set forth.

"In the event that at or before the end of one year from this date, said second party elects to continue the business and shall so signify to the first party, then all the agreements herein shall become permanent and binding and this contract shall remain and be in full force in and during the life of said patents and all alterations, improvements and renewals thereof and the said second party shall pay to the first party $2,500 in consideration thereof."

The petition is in two counts, the first in assumpsit for the price of the machines and the territory sold; the second in

trover for the conversion of the machines, fittings and quicksilver.

The first count in substance alleged the execution of the written contract, the sale of the territory specified, the furnishing by plaintiff to defendant on his order between November 20, 1894, and September, 1895, of a large number of the machines in question, giving the date, number, size and price, amounting at the price fixed by the contract to the sum of $2,101.25, no part of which had been paid; pleaded performance of the conditions of the contract by plaintiff except the giving of the refunding bond, and excused that omission on the ground that defendant had paid no money to plaintiff; pleaded the condition by which defendant had the right to rescind by giving notice within the year, and his failure to take advantage thereof, and asked judgment for the contract price of the machines furnished, $2,101.25, and the further sum of $2,500 stipulated for in said contract, to wit, damages in the aggregate sum of $4,601.25.

The second count, in substance, pleaded the contract, the account of machines furnished, of the number and price as in the first, that nothing had been paid, and although the defendant claimed to have rescinded said contract within the year, he had, nevertheless, failed and refused on demand to return said machines with the fittings and quicksilver, as provided by said contract, and asked judgment as for a conversion of the machines of the value of $2,101.25, fittings of the value of $1,500, and quicksilver of the value of $500, aggregating damages in the sum of $4,101.25.

The answer is in two counts, but both counts are substantially the same. The answer to the first count in the petition admits the execution of the contract, "by which plaintiff did sell the defendant the exclusive right to sell, rent and use the said regulator," etc., in the territory mentioned, and that plaintiff agreed to furnish and deliver in St. Louis, at the prices set forth, "for the several number of lights the

amount set forth;" pleaded the stipulation in regard to the refunding bond, and that plaintiff failed to give said bond; admitted that it was provided that he had the privilege at any time within one year of notifying, as alleged, of his election to cancel and annul said contract, and continued as follows: "That on September 20, 1895, long before the expiration of said year, he did so notify the plaintiff, who replied by telling the defendant that he would soon be in St. Louis and talk the matter over with him; that a long time thereafter, about January, 1896, plaintiff came to St. Louis and defendant offered to turn over to him all the governors, fixtures and mercury on hand at the time  .  .  .  in the manner as required by said contract, but that plaintiff refused to receive or accept the same."

This count, after denying any indebtedness, further pleaded: "That the contract further provides that if after one year the defendant elected to continue the business, and make the contract absolute, defendant should so signify to the plaintiff, his heirs or assigns, and in such event the contract should then become permanent and binding, and remain in full force. Defendant says that there was no profit, but a loss in the use of said machines, and refused and declined to elect to make said contract permanent and binding and by so doing the contract ceased to have any further force or effect, and that machines, fixtures, etc., which plaintiff had furnished, thereby became subject to the order of plaintiff, who refused to accept or receive the same."

The reply was a general denial.

Defendant admitted on the trial that he received all the machines at the dates alleged in the petition.

Defendant offered in evidence several letters written by him to plaintiff with respect to the regulator and governor, one of which bears date September 20, 1895, in which he spoke of his efforts to introduce them, the discouragement with which he had met, and then said: "And until we see

some encouraging indications, we are not disposed to carry out the contract as proposed. And will ask that you give us an extension of time that we may still further work the matter up and see what we can do before abandoning it." Another letter of similar import, dated October 9, 1895, written by defendant to plaintiff was also offered in evidence by defendant, but these letters were excluded upon objection by plaintiff upon the ground that they were incompetent.

Plaintiff then dismissed the second count in the petition, and the court over the objection and exception of defendant instructed the jury on behalf of plaintiff as follows:

"The contract sued on gave the defendant one year from November 20, 1894, to notify the plaintiff of his election to cancel the contract by letter directed and mailed in the manner and at the place specified in said contract, and you are instructed that there is no evidence that such notice was given within the year, and the defendant became bound to pay plaintiff for the machines furnished at the prices specified in the contract, and to pay the further sum of $2,500 upon said contract, and you will return your verdict for the plaintiff on the first count of the petition for the aggregate amount of the machines furnished by plaintiff to the defendant, after deducting the price of the machines returned, at the prices specified in the contract, to wit, the sum of $2,101.25, to which you will add the further sum of twenty-five hundred dollars for the territory sold, and return your verdict for plaintiff for the amount of $4,601.25."

Defendant prayed the court to instruct the jury as follows:

"1. The court instructs the jury that if they believe from the evidence that the agreement between the plaintiff and the defendant was to give the defendant an experimental option for the space of one year, and if the jury further believe from the evidence that the defendant within that time did not give any notice by which the contract should become

Ford v. Dyer.

permanent, then the jury are instructed that the contract ceased and became of no effect at the end of one year from the date of such agreement. And if the jury further believe from the evidence that in or about January, 1896, the defendant tendered and offered to turn over to plaintiff all the governors, fixtures, mercury, etc., on hand at the time received from him, excepting those already turned over to him, plaintiff, then the jury will find for the defendant..

"2. The court instructs the jury that if they believe from the evidence that on or about September 20, 1895, the defendant notified the plaintiff by letter postpaid and directed to him at Germantown, Pennsylvania, of the election to annul said contract and that plaintiff received such letter; and if the jury further believe from the evidence that on or about the month of January, 1896, defendant offered and tendered to turn over to plaintiff all the gas governors, fixtures, mercury, etc., on hand at the time named received from him, excepting those already turned over to him, then the jury will find for the defendant.

"3. The court instructs the jury that if they believe from the evidence that there was an agreement between plaintiff and defendant that plaintiff would forthwith from the date of such agreement furnish and deliver to defendant, a bond in the sum of $2,500, or'more, to refund to defendant all moneys paid for machines on demand in case of election to rescind the contract; if the jury further believe from the evidence that the agreement was that no payment shall be demanded or due and payable on said machines until the said bond is executed and delivered to the said defendant; and if the jury further believes from the evidence that no such bond has been given; then the jury are instructed that under the contract there is no sum due and payable on said machines.

"4. The court instructs the jury that if they believe from the evidence that on or about September 20, 1895, the

defendant notified the plaintiff by letter postpaid and directed to him at Germantown, Penn., of his election to annul said contract, and if the jury further believe that the plaintiff received said letter, then the jury are instructed that the plaintiff is not entitled to recover the said sum claimed of $2,500 or any part thereof."

Which instructions the court refused and defendant duly excepted.

Under the instructions of the court the jury found a verdict for the plaintiff for $4,601.25, against the defendant. In due time defendant moved for new trial and in arrest, which being overruled, he appeals.

It is claimed by defendant that by the contract in suit there was no absolute sale of the machines, or governors, or of the territory, or the use of the patents therein, and that nothing more was created by the agreement than an experimental option for one year, during which time the defendant might experiment, at his own expense, on the machines in the territory, with a proviso that if he chose not to spend any more money at any time experimenting he could throw the whole thing up, or if he desired to convert the agreement or option into a permanent contract of sale and obtain a title to the machines and territory he must within the year give notice of such intention, in the manner provided by the contract. That in the one case he could if he so elected end the agreement before the end of the year, but in the other case, he must confirm the arrangement into a final contract of purchase and sale within the time and manner prescribed, and pay plaintiff $2,500 within the year. And that as he did not elect to make the agreement permanent no title passed to him to either the patents, machines or territory. But this does not seem to us to be a proper construction of the contract. With respect to the territory, the right to it seems to have passed at once upon the execution of the contract. It says "the party of the

first part, does hereby bargain and sell, assign, grant and convey to the party of the second part . . . the exclusive right to sell, rent and use the said regulator . . . in the city and county of St. Louis, Mo., with the further privilege, concurrent with the said party of the first part, but not exclusive, of selling, renting, and using the same in the State of Missouri, excepting the cities of Kansas City and St. Joseph, for the whole time or term of said patents," etc.

It would be difficult to couch words of conveyance in stronger language than are used in this contract. They are of no uncertain meaning, but had the effect to at once vest in defendant the exclusive right to sell, vest, and use the said regulator except as provided in said contract. As to this there can be no serious question.

By another provision of the contract Ford was to furnish Dyer machines to any amount or number that he might require, at the prices fixed by the contract, to be paid for on delivery in St. Louis, Dyer paying the freight; but no machines thus furnished were to be paid for until plaintiff executed to Dyer a bond in the sum of $2,500, to refund to him promptly all moneys paid for machines on demand in case of his election to rescind the contract within the time fixed thereby. Under this provision of the contract there can be no question but that the title to the machines passed to and vested in defendant upon their delivery to him.

Then by a condition subsequent in the contract Dyer was given one year from the date of the agreement, to wit, November 20, 1894, to annul or cancel it by notifying Ford, by a letter postpaid and directed to him at Oakland, California, and placed in the postoffice in Saint Louis, Missouri, of his election so to do, whereupon the contract was to stand canceled, it being the object as stated therein to give Dyer an experimental option for the space of one year to test the value and working of said machines.

Upon this notice being given in accordance with the

terms of the contract, all machines and devices, including the fittings and quicksilver therein, received by Dyer were to be promptly returned to Ford, and he in turn was required forthwith to pay and refund to Dyer all money paid by him for machines up to that time. The contract also recites that "after such notice and accounting the whole contract shall cease, and each party shall stand fully discharged."

If we are correct in our interpretation of the contract in holding that the title to the territory passed to Dyer upon its execution, and the title to the machinery upon its delivery to him, the contract could only be rescinded thereafter, in the absence of fraud, in the manner and within the time prescribed by the contract. For the purpose of showing that defendant annulled the contract he offered in evidence the letters written by him or his agent to plaintiff of September 20, and October 9, 1895.

As authority for the contention that the contract was canceled by these letters, defendant relies upon Thayer v. Allison, 109 Ill. 180; but in that case the rescission of the contract was to be made by its return to the vendor with a release of the vendor indorsed thereon, he to retain the purchase money that had been paid. The time at which the second payment was to be made was extended and within this time the vendee returned the contract to the vendor with a request for a further extension which was refused, and the contract returned to the vendee. It was held that the condition for rescission had been complied with by the return of the contract to the vendor within the extended time. It is clear that this case is not an authority in support of defendant's position.

In order to be effective for this purpose the intention to rescind as expressed in the letters must be clear and unequivocal [Crescent Mfg. Co. v. Nelson Mfg. Co., 100 Mo. 325], and it can not be said that any such intention was thus expressed in them. Upon the contrary in the one of September

20th, an extension of time is asked in order to work the matter up, and see what could be done before abandoning the contract, which seems to be inconsistent with the idea that defendant intended by that letter to cancel the contract, and the letter of October 9th conveys no such intention.

Defendant having failed to show a rescission of the contract, was error committed in giving the peremptory instruction to find for the plaintiff the full amount claimed in the first count of the petition, and in refusing the instructions asked by defendant? Of these in their inverse order. The instructions asked by defendant were properly refused, because by the first and third the interpretation of the contract, and by the second and fourth the interpretation of the letter of September 20th, were submitted to the jury, when that was the province of the court. [State to use of Early v. Lefaivre, 53 Mo. 470; Comfort v. Ballingal, 134 Mo. 281; Chapman v. Railroad, 114 Mo. 542.] It is the duty of the court to ascertain and interpret the meaning of written instruments as a matter of law, and this duty can not be shifted to a jury.

The third instruction was properly refused for the further reason that it makes the execution of the bond by plaintiff to defendant in the sum of $2,500, for the refunding to him of all moneys paid for machines on demand in case of election to rescind the contract, a condition precedent, when the contract was never rescinded. The failure to give the bond would in all probability have released the defendant from paying for the machines on delivery, or at any time within the year, but it did not release defendant from a compliance with the other provisions of the contract.

The question then recurs, as to whether there was error in giving the peremptory instruction to find for plaintiff.

In speaking of an instruction of a similar character in Wolff v. Campbell, 110 Mo. 120, it is said: "There are cases where such an instruction may properly be given; as where the plaintiff's case, under the pleadings, turns wholly on the

construction of a contract,the construction of which is simply a question of law; or where the answer admits the plaintiff's cause of action and sets up new matter as a defense, and the evidence fails to make out a *prima facie* defense. Ordinarily, where the plaintiff produces parol evidence to support his action, the issue of fact should be submitted to the jury. . . . The court has no right to tell the jury, they must believe the witnesses." See, also, Bryan v. Wear, 4 Mo. 106; Vaulx v. Campbell, 8 Mo. 224; Gregory v. Chambers,. 78 Mo. 294.

The construction of the contract being for the court, after defendant admitted that he had received and still retained all the machines for which compensation was claimed in the first count of the petition the purchase price for which was fixed by the contract and no evidence had been introduced by him showing a cancellation of the contract, our conclusion is that no error was committed in giving the peremptory instruction to find for plaintiff.

Finding no reversible error in the record we affirm the judgment. GANTT, P. J., and SHERWOOD, J., concur.