## HAUGHTON *v.* AETNA LIFE INSURANCE COMPANY.

[No. 20,498.  Filed February 23, 1905.  Rehearing denied June 1, 1905.]

1.—APPEAL AND ERROR.—*Certiorari.*—Where the only objection urged against an answer was that it failed to set out a copy of an application, such objection will not be considered where the return to a writ of *certiorari* shows that a copy of such application was filed therewith.  p. 34.

2.  EVIDENCE.—*Confidential Communications.—Physicians.—Statutes.*—Section 505 Burns 1901, §497 R. S. 1881, providing that physicians shall not be competent witnesses "as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases," does not prohibit a physician from testifying to the fact of his employment, and the rendition of professional services to a patient.  p. 35.

3.  SAME.—*Insurance.—Declarations of Insured Before Delivery of Policy.—Fraud.*—Where one paragraph of answer, tendering an issue of fraud of the insured, alleged that the life policy sued on was not delivered until a certain day, evidence of declarations of the insured shortly before such date as to his suffering from a severe surgical operation is admissible.  p. 36.

4.  SAME.—*Fraud.*—Where an issue of fraud is tendered, evidence of the condition, relations, conduct, acts and declarations of the parties to a life policy is admissible.  p. 36.

5.  SAME.—*Fraud.—Insurance.—Health of Insured.*—Where an issue of the fraud of insured in representing the state of his health in taking out a life policy is tendered, all declarations of the insured, not remote in time, concerning his health or in explanation of his appearance, walk or use of medicines, and also evidence concerning his physical condition shortly before and after the taking of such policy are admissible.  p. 36.

6.  SAME.—*Insurance.—Life Policy.—Delivery.*—In a suit on a life policy where one of the defenses alleges, among other things, the nondelivery of such policy until a date subsequent to the date of the policy, evidence to show the date of delivery is admissible.  p. 37.

7.  SAME.—*Insurance.—Proofs of Death.—Explanations.*—In an action on a life policy, the proofs of death furnished by the beneficiary are admissible in evidence against such beneficiary, and if they are opposed to the beneficiary's interest, such beneficiary may offer explanations thereof.  p. 37.

8.  TRIAL.—*Fraud.—Taking Case from Jury.*—While our Consti-

Haughton *v.* Aetna Life Ins. Co.—165 Ind.   32.

tution requires that "in all civil cases, the right of trial by jury shall remain inviolate," and while the courts scrupulously guard against any enroachment thereon, still, where there is a total failure of proof in the evidence of the party having the burden, the court may direct a verdict for the other party to. the issue.   (*James* v. *Fowler*, 90 Ind. 563; *Miller* v. *White River School Tp.*, 101 Ind. 503; *Hall* v. *Durham*, 109 Ind. 434, partly disapproved.—See petition for rehearing.)   p. 37.

9.   TRIAL.—*Jury.—Invasion of Province of.*—Where a verdict depends upon the credibility of the witnesses, and rests upon inferences and deductions from the facts established, it is an invasion of the province of the jury for the court to direct a verdict.   p. 40.

10.   SAME.—*Fraud.—Question for Jury.*—In an action on an insurance policy, where the defendant answers only that the policy sued on was fraudulently procured, the presumption is that the insured acted honestly, and the defendant, to avoid the policy, must establish the fraud, and since the fraud was denied and was a fact to be deduced from other facts and circumstances shown by the defendant's evidence, it was error for the court to take that question from the jury, the court's right to pass upon the weight of the evidence being reserved until invoked by a motion for a new trial.   p. 40.

11.   SAME.—*Directing Verdict.—Federal Court Rule.*—The rule as to directing verdicts is different in the federal courts from that of the Indiana courts.   p. 42.

12.   SAME.—*Directing Verdict for Defendant.*—Where plaintiff has the burden of proof and wholly fails to furnish proof on a material point, the court may direct a verdict for defendant. *Oleson* v. *Lake Shore, etc., R. Co.*, 143 Ind. 405 and *Weis* v. *City of Madison*, 75 Ind. 241, approved.   p. 42.

From Sullivan Circuit Court; *Orion B. Harris,* Judge.

Action by Permelia P. Haughton against the Aetna Life Insurance Company.   From a directed verdict for defendant, plaintiff appeals.   Transferred from Appellate Court under §1337o Burns 1901, Acts 1901, p. 565, §15.   *Reversed.*

*William A. Cullop, George W. Shaw, Alvin McClure, George W. Buff, John S. Bays, Jesse P. Houghton* and *Samuel Emison,* for appellant.

*W. C. Johnson, W. R. Gardiner* and *J. T. Hays,* for appellee.

MONTGOMERY, J.—This action was brought by appellant against appellee upon a policy of insurance upon the life of George A. Haughton, appellant's son. The contract was an endowment policy for $2,000, payable to the insured if living at the maturity of the policy, and to his mother in the event of his death prior thereto, and, in case of her death before his, then to his administrator. The contract provided that the beneficiary might be changed at the option of the insured. The policy was dated December 17, 1898, and the insured died in July, 1899. Appellee answered the complaint in three paragraphs, each admitting the issuance of the policy, the death, notice and proof of death, of the insured, as alleged in the complaint, and averring affirmative matter in avoidance of liability. The first paragraph of answer is based upon the fraud of the insured in making false statements in the application, and on breaches of warranties. The second is predicated upon fraud in the purpose of the procurement of the policy. The third is founded upon breaches of warranties that rendered the policy void, and alleges that the policy was not delivered until the 7th day of February, 1899. A copy of the application for insurance was filed with and made a part of each paragraph of answer. Appellant replied by general denial, and also by affirmative matter alleging knowledge by appellee of the facts before and at the time of issuing the policy. The cause was submitted to a jury for trial, and upon the conclusion of the evidence, the court, upon appellee's motion, instructed the jury to return a verdict for the appellee. Appellant's motion for a new trial, was overruled, and an exception properly saved.

Error is assigned on the overruling of appellant's demurrer to appellee's answer, and in overruling the motion for a new trial. The only objection urged to the

1.    answer was that no copy of the application for insurance was filed with it. The return to a writ of *certiorari* shows this objection not to be well founded in fact, and, with this exhibit supplied, the answer is sufficient.

A number of alleged errors were specified in the motion for a new trial. Those relied upon in appellant's brief are: In allowing Dr. Moore to testify as to his professional employment by, and advice to, the deceased; in admitting the statements and declarations of the deceased to the effect that he had undergone a surgical operation; in permitting appellee to show that the policy was not delivered until February 7, 1899; in admitting in evidence proofs of death of the insured; in refusing to allow appellant to testify that she knew nothing of and never saw the statement by Dr. Lisman, made in the proofs of death, as to the cause of death; and in giving the peremptory instruction to the jury.

Dr. M. G. Moore testified, over appellant's objection, that George A. Haughton, the insured, personally employed him, and that he advised professionally with said Haughton during the months of October, November and December, 1898. Section 505 Burns 1901, §497 R. S. 1881, prohibits physicians from testifying to "matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases." Competency to testify is the rule, and incompetency is the exception. No person will be excluded from testifying, and no testimony be rejected, unless within the inhibition of the statute. The statute in no manner attempts to prohibit a physician from testifying to the fact of his employment, and the rendition of professional service to a patient. Such facts are not secret and confidential, but may be, and usually are, known by other persons. The statute only forbids the physician from making public matter concerning his patient communicated to or learned by him, as such, through his professional relation. This rule was not violated in the testimony given by Dr. Moore, and there was no error in overruling appellant's objection to this evidence. *Briesenmeister* v. *Knights of Pythias* (1890), 81 Mich. 525, 45 N. W. 977; *Brown* v. *Metropolitan Life Ins. Co.* (1887),

65 Mich. 306, 32 N. W. 610, 8 Am. St. 894; *Nelson* v. *Nederland Life Ins. Co.* (1900), 110 Iowa 600, 81 N. W. 807; *Patten* v. *United Life, etc., Assn.* (1892), 133 N. Y. 450, 31 N. E. 342; *Sovereign Camp, etc.,* v. *Grandon* (1902), 64 Neb. 39, 89 N. W. 448; *Price* v. *Standard Life, etc., Ins. Co.* (1903), 90 Minn. 264, 95 N. W. 1118.

Three witnesses for appellee testified to statements made to them by the insured in the latter part of December, 1898, to the effect that he was suffering from the effects of a severe surgical operation recently performed upon him. These statements were objected to by appellant, for the reason that they were made after the issuance of the policy, and therefore not binding upon the beneficiary. The third paragraph of answer charged that the contract was not fully executed by delivery until February 7, 1899, and the ground of the objection was clearly not tenable as to that paragraph of answer.

The defense was founded upon the alleged fraud of the insured. It is very rare that a fraudulent act is so openly done, or a fraudulent scheme so bunglingly executed, as to admit of direct and positive proof; but usually fraud must be exposed and established by circumstances which arise out of the condition, relation, conduct and declarations of the parties. It was competent to introduce in evidence, in support of the charge in this case, every act and declaration of the insured which was so related to the transaction as to be, in its nature, calculated to persuade the jury that the charge of fraud was made out.

The declarations introduced in evidence were not remote in point of time from the date of the policy. The material point in controversy was the physical condition of the insured at the time he made and signed the statements contained in the application for insurance, and his own knowledge of the same. As tending to show such facts, evidence of his physical condition shortly before and immediately after the time in question was competent.

The statements were made by the insured in explanation of contemporary facts—to Bert Clark, an intimate friend, while he was in bed, as explanatory of that fact; to Peter Phillipi, the county superintendent, in explanation of the dismissal of his school; to Milton Wampler, in explanation of his appearance, walk, and the smell of iodoform about his person. These declarations made in connection with the manifestly impaired condition of his health at the time, and explanatory thereof, were admissible under the issues of the case, as tending to show knowledge of his physical condition at the time of making the alleged false and fraudulent statements. *Swift* v. *Massachusetts Mut. Life Ins. Co.* (1875), 63 N. Y. 186, 20 Am. Rep. 522; *Kelsey* v. *Universal Life Ins. Co.* (1868), 35 Conn. 225; *Aveson* v. *Kinnaird* (1805), 6 East 188; *Stauffer* v. *Young* (1861), 39 Pa. St. 455.

6. There was no error in the admission of evidence to prove that the policy was not delivered until February 7, 1899.

7. The proofs of death furnished by appellant were properly admitted in evidence. If any statement contained therein operated to bind appellant, as an admission against her interest, she was entitled, at the proper time, to give any explanation of the same which she might have. No offer to prove any fact or explanatory matter in response to the question propounded and objected to was made at the time by appellant, and for that reason no question was saved as to the court's ruling upon this point.

8. Appellee filed no answer in general denial of the complaint, but assumed the burden of the issues, and relied wholly upon affirmative defenses. Did the court err in directing a verdict for appellee, upon whom the burden of proof rested? It is charged in the several answers of appellee that George A. Haughton, in his application for insurance, made and warranted to be true statements known by him at the time to be false, in the following

particulars: That he was then in good health, of sound
body and mind, and had no knowledge or information of
any disease, infirmity or circumstance which might render
insurance on his life more hazardous than if said disease,
infirmity or circumstance had never existed; and that he did
not have tumors, ulcers, or diseases of the urinary organs,
or nervous afflictions, or predisposition thereto; that he had
not met with any severe personal injury, or been subjected
to any severe surgical operation, and had not during the last
seven years had any disease or severe sickness, and that
neither of his parents, brothers or sisters had been afflicted
with insanity, pulmonary, or other hereditary diseases; that
he had no physician, and had not personally employed or
consulted one; that he had no other insurance, and no physi-
cian had expressed any unfavorable opinion upon his life
with reference to insurance; and that no proposal or appli-
cation for insurance had been made to any company or agent
and not granted.

It is charged that the answers and statements of the in-
sured are false, as he well knew at the time, in the following
particulars: That the deceased was not in good health, nor
of sound body, but was suffering with maladies known as
cancer, tumor, and sarcoma, and was afflicted with nervous
affection, and had often been treated therefor by physicians,
and was afflicted with tumors, ulcers, and a cancerous affec-
tion, and disease of the urinary organs, and but recently,
before making said application, had received a severe per-
sonal injury in the groin, which shortly afterwards, and
before the delivery of the policy in suit, necessitated a sur-
gical operation; that immediately before making said appli-
cation he had consulted physicians, and been treated by
them; that his father and sister had been afflicted with in-
sanity, and his father had been treated in hospitals for the
insane in both the states of New York and Indiana; that
at the time of making said application he had a physician
with whom he was then consulting, and from whom he

was receiving treatment, to wit, Dr. M. G. Moore; that within thirty-six hours next before making said application he had consulted the following physicians with reference to his maladies and physical condition, to wit, M. G. Moore and William H. Davenport; that he had learned from them the fact that he was afflicted with cancer, with tumor, with sarcoma, with scrofula, and with disease of the urinary organs and that he then held insurance for $5,000 in the Life Insurance Company of America.

We are not required now to determine which of the warranties were material, and which, if any, were immaterial, in the contract of insurance.  It will not be necessary to a decision of this case to set out in the opinion the evidence in detail or in substance.  The evidence upon the subject of the falsity of statements made by the insured in the application, and in respect to his alleged fraudulent purpose in procuring the insurance, was chiefly oral.  Much of the testimony was uncontradicted, but there was conflicting evidence as to the sanity of Andrew J. Haughton, father of the insured.  The affirmative defenses required appellee to establish the breach of a material warranty or fraud, as charged on the part of the insured; and, keeping in mind the nature of the issues, it will suffice to say that our conclusion is that the evidence was not of such a character as to authorize or justify the court, as a matter of law, in withdrawing the case from the jury by directing a verdict.

The Constitution of this state (Art. 1, §20) provides: "In all civil cases, the right of trial by jury shall remain inviolate."  Courts have guarded this right, with scrupulous care, against any encroachment.  In all cases triable by jury the jurors are the sole and exclusive judges of the facts proved, and, of necessity, therefore, of the credibility of witnesses, and of the weight to be given to their testimony.

Where upon a material point there is a failure of proof in the evidence of the party having the burden of an issue, the court may, as a matter of law, instruct the jury in favor

of the other party to such issue.   Where the facts are ad-
mitted by the pleadings or otherwise, or where the evidence
upon the controlling question is documentary, and its inter-
pretation and construction a matter for the court, and but
one conclusion reasonably deducible therefrom, then in such
cases the court may, as a matter of law, direct a verdict in
accordance with the evident facts, and in favor of the party
having the affirmative of the issue.

But where a determination of the issue involves the
credibility of witnesses, and rests upon inferences and de-
ductions to be drawn from facts proved, it will be
9.   an invasion of the province of the jury for the court
to direct a verdict.

In this case the existence or nonexistence of the fraud
charged was a matter peculiarly fit for the determination
of a jury.   The law presumes all men to be honest
10.   in their dealings, and fraud is seldom, if ever, a pre-
sumption of law.   When charged, it must be proved
as alleged; and it is not usually susceptible of direct proof,
but must be inferred by the trial court or jury from the
existence of other facts and circumstances attending the
transaction in question.   It will not suffice to say that a
right result was reached, and we can not with propriety
intimate an opinion upon that subject.   We must assume
that the jury, in the faithful discharge of its duty, would
have found the facts according to the weight of testimony;
but such a sufficiency of evidence as ought to satisfy the
jury, or the circumstances that it was in part uncontra-
dicted, will not, in our opinion, authorize a court to direct
the jury that it proves the fact in controversy.

When the judgment of the judge upon the sufficiency of
the evidence to sustain the verdict is invoked by a motion
for a new trial, then it becomes his duty, under the law, to
weigh the evidence for himself, and either to confirm or
overthrow the conclusion of the jury as in his opinion the
preponderance of the evidence may require.   But until such

time as the matter may be thus brought before him, the duty of weighing the evidence must be left with the jury, where the law has placed it. The giving of the peremptory instruction in favor of the appellee, having the burden of the issue, was, upon the evidence in this case, an invasion of the province of the jury. *Wagner* v. *Weyhe* (1905),164 Ind. 177; *Board, etc.,* v. *Garrigus* (1905), 164 Ind. 589; *Gaff* v. *Greer* (1882), 88 Ind. 122, 45 Am. Rep. 449; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25; 6 Ency. Pl. and Pr., 694; *Wolff* v. *Campbell* (1892), 110 Mo. 114, 19 S. W. 622; *Woodin* v. *Durfee* (1881), 46 Mich. 424, 9 N. W. 457; *Huff* v. *Cox* (1841), 2 Ala. 310; *Charleston Ins., etc., Co.* v. *Corner* (1844), 2 Gill (Md.) 410; *New Orleans, etc., R. Co.* v. *Thomas* (1894), 60 Fed. 379, 9 C. C. A. 29; *Anniston Nat. Bank* v. *School Committee, etc.* (1897), 121 N. C. 109, 28 S. E. 134; *Louisville, etc., R. Co.* v. *Clark* (1899), 20 Ky. Law Rep. 1375, 49 S. W. 323; *Morey* v. *Laird* (1899), 108 Iowa 670, 77 N. W. 835; *Ford* v. *Dyer* (1899), 148 Mo. 528, 49 S. W. 1091; *Price* v. *Standard Life, etc., Ins. Co.* (1903), 90 Minn. 264, 95 N. W. 1118.

For the error in giving the peremptory instruction to the jury, the judgment is reversed, with directions to sustain appellant's motion for a new trial.

## On Petition for Rehearing.

Montgomery, J.—In the petition for a rehearing appellee urges the sufficiency of proof to sustain its answers founded upon breaches of warranty, and, upon these answers and this proof, asks us to uphold the action of the trial court in directing a verdict. We can not concur in appellee's view of the law. The principle announced in the original opinion was intended to apply to these defenses as well as to the answer founded upon fraud. We are not to be understood as intimating that any of the warranties relied upon are immaterial, or as expressing any opinion

as to the sufficiency of the evidence to sustain the defenses pleaded, but we merely decline now to consider these questions.

The rule of law with regard to directing verdicts is different in the federal courts from that of this court, and the federal rule has been followed by some of the state courts, but we are content to adhere to the doctrine announced in the original opinion.

The cases of *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 32 L. R. A. 149, and *Weis* v. *City of Madison* (1881), 75 Ind. 241, 39 Am. Rep. 135, are cited in support of appellee's contention. The verdict was directed in favor of the defendant in each of these cases on account of a failure of proof on the part of the plaintiff, and that action was sustained on appeal. We approve those cases.

*James* v. *Fowler* (1883), 90 Ind. 563, is cited. The instruction given in that case by the trial court was proper, and the cause was correctly decided upon appeal. The opinion unnecessarily announced a legal principle, which we can not approve.

The cases of *Miller* v. *White River School Tp.* (1885), 101 Ind. 503, and *Hall* v. *Durham* (1887), 109 Ind. 434, 437, so far as they conflict with the rule of law announced in the original opinion in this case, are disapproved.

The petition for a rehearing is overruled.