JENNETTE W. HALE v. LIFE INDEMNITY & INVESTMENT COMPANY.[1]

July 17, 1896.

Nos. 10,063—(255).

**Life Insurance—Insurable Interest of Creditor—Notes in Lieu of Original Notes.**

This is an action on a life insurance policy assigned by the assured to the plaintiff, his creditor, as her interest might appear. *Held*, that the plaintiff had an insurable interest in his life, and continued to hold the policy as security for her debt, although she surrendered the original note evidencing her debt, and took other notes of the assured, and that the evidence was sufficient to sustain a finding that the new notes were taken in lieu, and not in payment, of the original note and debt.

**Same—Amount of Recovery—Whole Debt not Due.**

*Held*, further, that the plaintiff, if entitled to recover on the policy, was entitled to the full face value thereof, although a portion of her debt was not due at the time of the trial.

**Suicide—Declaration of Intention as Evidence—Remoteness.**

Where the issue is whether a person did a certain act,—for example, committed suicide,—his declarations, made at or about the time he is alleged to have done the act, to the effect that he intended to do it, are admissible as original evidence, if made under circumstances precluding any suspicion or misrepresentation. But *held*, in this case, that such declarations made two years before the alleged act were too remote, and the trial court did not err in excluding them.

**Life Insurance—Declaration of Assured as to Health—Error Cured by Subsequent Admission of Evidence.**

*Held*, that certain rulings of the trial court, excluding evidence as to the declarations of the assured as to his health made prior to his application, were, if erroneous, corrected by afterwards allowing the defendant to give such evidence.

**Same—Evidence in Rebuttal—Statement of Assured as to Intemperate Habits.**

The defendant offered in rebuttal certain written statements of the assured as to his intemperate habits. *Held*, that their admission at the time they were offered was a matter of discretion with the trial court, and that it did not err in excluding them.

[1] Reported in 68 N. W. 182.

**Same—Policy—Presumption of Validity.**

The court instructed the jury that the presumption was that the policy was valid, until the contrary was made to appear, and added, "This is only one form of saying that the burden of proof rests upon the defendant, and not upon the plaintiff, to show that the policy is not a legal and binding contract, as it purports to be." *Held*, that the instruction, as a whole, was not erroneous.

**Same—Warranty by Assured of Truth of Answers.**

The assured warranted the truth of his answers made in his application, and the trial court instructed the jury that he was bound to answer accurately so far as he undertook to answer, but that his warranty could not be extended beyond his answers as actually given. *Held*, that the instruction was correct, and that certain requests to charge, which were not in harmony therewith, were properly refused.

**Verdict Sustained.**

Evidence considered, and *held* that it sustains the verdict.

Appeal by defendant from an order of the district court for Hennepin county, Pond, J., denying a motion for a new trial after a verdict in favor of plaintiff. Affirmed.

The question referred to in defendant's assignment of error No. 20 was if the witness knew whether a premium on another life policy had been paid.

*James O. Pierce*, for appellant.

*F. D. Larrabee* and *Shaw, Cray, Lancaster & Parker*, for respondent.

START, C. J.[2] This is an action on a policy of life insurance in the sum of $10,000, issued by defendant to James B. Rouse upon his own life on September 7, 1892, and assigned to the plaintiff. The assured died November 25, 1893; and plaintiff, claiming an insurable interest in his life, made and furnished proofs of his death to the defendant, and demanded payment of the policy to herself, by virtue of such assignment. Payment was refused.

These facts are duly alleged in the complaint. The answer admits the making of the policy, and alleges that the assured committed suicide. This phase of the defense was considered on a former appeal in this case. 61 Minn. 516, 63 N. W. 1108. The answer also alleges, among other defenses, that the warranties on the part of the assured,

2 Mitchell, J., took no part.

contained in his application for the insurance, were false in the following particulars: He had been, prior to such application, subject to the disease of dyspepsia, grossly intemperate in his habits as to the use of intoxicating liquors, and addicted to the morphine habit. He was not in a sound physical condition and a fit subject for life insurance, to his own knowledge; and, further, that his answers to questions as to the causes for which he had sought medical advice, and the names of his physicians, were false. The reply denies these allegations of the answer. Plaintiff had a verdict for the full amount of the policy, and the defendant appealed from an order denying its motion for a new trial.

The defendant's assignments of error may be classified under three general heads: The rulings of the trial court as to the admission and rejection of evidence; its rulings in giving and refusing instructions to the jury; the sufficiency of the evidence to support the verdict.

1. Assignments of error 9 and 10 raise the question of the correctness of the trial court in receiving in evidence plaintiff's Exhibits C (the proofs of death) and J (the notes of the assured indorsed to the plaintiff). They were properly received in evidence as tending to establish the plaintiff's cause of action, and that, as a creditor, she had an insurable interest in the life of the assured. Whether she established such interest will hereinafter be referred to.

Alleged errors 14, 15, 16, and 17 challenge the correctness of the ruling of the court in excluding testimony as to the declarations of the assured on the subjects of suicide and his health.

The defendant offered to show by the witness Jaggard that in October and December, 1891, the assured, in connection with a conversation as to his financial condition, said to the witness, in substance, "If you press me now upon that claim which you hold against me, * * * I will commit suicide," and that he further said in that connection, "If at any time I get severely pressed in the future, financially, I will commit suicide." The defendant claims that this was competent evidence on the question whether the assured died by his own voluntary act.

It is true that, when the question is whether a person did a certain act, his declarations, oral or written, made prior to and about the time he is alleged to have done the act, to the effect that he in-

tended to do it, are admissible as original evidence, if made under circumstances precluding any suspicion or misrepresentation. Mutual Life Ins. Co. v. Hillmon, 145 U. S. 285, 12 Sup. Ct. 909; Commonwealth v. Trefethen, 157 Mass. 180, 31 N. E. 961. The rule rests upon the basis that where the inquiry is whether a party did an alleged act,—for example, committed suicide,—and there is evidence in the case tending to show that in fact he did do the act, proof that he had formed a previous intention to do it is material and competent, as tending to corroborate such evidence and support the theory of suicide. Such intention is a fact to be proven, and may be established by the declarations of the party made at or about the time it is claimed the act was done. · The cases cited fully sustain the rule, and illustrate its limitations. The declarations must, in order to be admissible in evidence, bear a reasonably close relation, in point of time, to the alleged act. The reason for the rule suggests and enforces the necessity of this relation between the declaration of the party, and the doing of the alleged act by him. They must be so near in point of time as to justify a reasonable probability, in connection with the other evidence in the case, that the party in fact carried his declared intention into execution. No definite rule applicable to all cases can be laid down as to when, and when not, such declarations will be received. It is a matter largely in the sound discretion of the trial court in each particular case.

The cases cited and relied on by the defendant are not in conflict with the views we have expressed. In the case of Smith v. National Benefit Soc., 123 N. Y. 85, 25 N. E. 197, a series of acts and declarations of the assured, covering a period of nearly a year before his death, were admitted in evidence in support of the defense that, in pursuance of a deliberately planned scheme to defraud the defendant and other insurance companies, the assured procured insurance on his life in 36 companies to the aggregate amount of $285,000, and consummated the fraud by suicide. The issue was not that he had committed suicide in violation of any stipulations in the policy, for it contained none, but fraud in procuring the policy was the issue, and great latitude was properly allowed in the admission of evidence to prove the fraud. Evidence of continued acts and declarations of the assured up to the day before his death were received as a part of the chain of circumstances tending to prove the fraud, and as a

part of the history of it; in short, as a part of the res gestæ. The case is so radically different, as to the issues and facts, from the one at bar, that it is not in point. The cases of Hathaway's Admr. v. National Life Ins. Co., 48 Vt. 335, and Hartman v. Keystone Ins. Co., 21 Pa. St. 466, are not relevant to the question we are considering. In the first case the declarations received in evidence were made some two weeks before the assured committed suicide, and were received on behalf of the plaintiff as tending to show that the assured was insane when he committed suicide. In the second case, declarations of the deceased, offered on behalf of the plaintiff to rebut the evidence tending to show suicide, were rejected. The declarations received in Commonwealth v. Trefethen, supra, were made the day before the death of the party making them.

The declarations of the assured here in question were made in the fall of 1891,—a year before the policy was issued, and two years before his death,—and were no part of the res gestæ, and were too far removed in point of time from the death of the assured, to justify any reasonable inference that his death was the execution of such alleged declared intent. The trial court, in its discretion, was fully justified in excluding the evidence of such declarations.

It is further claimed that the court erred in excluding declarations on the subject of his health made by the assured prior to the issuance of the policy.

The first of such alleged errors is the ruling of the court in sustaining an objection to the defendant's question to the witness Jaggard, who testified that he met the assured in the fall of 1891. The question was, "You may state what he stated to you in regard to the condition of his health at that time." Other than as may be inferred from the question, the record does not disclose what declarations of the assured the defendant desired to prove.

Whether the ruling on this particular question was correct or not, we need not stop to inquire; for it appears from the record that the witness was subsequently, and during his examination in chief, allowed to, and did, testify fully as to the subject-matter of this question. The witness testified that he had seen the assured when he was sick, and described his appearance and symptoms, and continued as follows:

"Q. Did he make any complaint as to whether he was suffering? A. Yes, sir. Q. What did he say with reference to his sickness, if anything? A. I asked Mr. Rouse, on a number of times, what was the matter with him. I might say, and he replied a number of times to me, that he had been prostrated by nervous dyspepsia. Q. Did he complain of any particular pain at any of these times,—I am confining myself now to Minneapolis? A. Except as I have stated, I don't recall. Q. Did he at the same time state what the length or duration of this nervous dyspepsia had been? A. Yes; I think he did. I think Mr. Rouse talked to me pretty freely about his physical condition."

The witness gave further testimony along the same line, and the whole subject of the assured's health, and his statements as to the same, appear from the record to have been gone into just as fully as the defendant desired.

The defendant, however, now claims that the evidence admitted "was far from identical with that sought to be introduced and excluded." This may be true, but we can only deal with the record, and, in the absence of any offer or statement as to what was sought to be proven by the question, the objection to which was sustained, it clearly appears that the ruling of the court, if error, was harmless, for the reasons suggested.

For similar reasons, there was no error in sustaining the objection to the question to the witness Green, which was as follows: "Did you have any talk with Rouse, or did he made any statements to you, concerning his condition of health that day?" This was merely a preliminary question, and wholly immaterial, unless, in case of an affirmative answer, it was followed by the further question as to what the statements were. Assuming—what does not appear from the record—that it was the purpose of the defendant to follow the question with others, for the purpose of eliciting material evidence, we are of the opinion that the question was substantially answered in response to the two questions which immediately followed: "Q. Did you observe anything concerning his condition of health or strength on that day? A. No, sir. Q. Did he make to you any complaints of any physical sufferings or ailments on that occasion? A. No, sir."

One of the defendant's witnesses (Sniffen) testified that he visited and saw the assured on several occasions in the year 1891, when he

appeared to be sick; and the witness was asked what the assured stated, on each of the occasions, as to the nature of his illness. The form of the question was substantially the same in each case, and was, "What did he say, if anything, about the nature of his illness?" The court sustained the plaintiff's objections to these questions. But the witness was permitted afterwards to, and did, answer the questions fully; and if the original ruling was error it was corrected, and the defendant was not prejudiced. But the defendant claims that what was subsequently testified to by the witness was not all that the assured said as to his then present condition of health. The record does not justify the claim. The subsequent testimony referred to is as follows:

"Q. During the different times that you saw Mr. Rouse sick in the year 1891 and in January, 1892, did Mr. Rouse say anything to you about the nature of his illness? The Court: I want the witness to understand that he is to tell what Mr. Rouse said he was then suffering with. Witness: That is what I understand the question. The Court: That is, upon these occasions when you found him sick as you have described him. Witness: Yes, sir. Q. What did he say he was suffering with? A. His 'old stomach trouble.' Q. Did he say that upon each of the times that you saw him in the year 1891? A. No, sir. Q. Which of these occasions did he say that? A. On the majority of them. He always referred to stomach trouble. When he was at my house, for instance, he had to open his vest, complaining that he couldn't stand the pressure on his stomach. He complained of dyspepsia, and of cramps, severe cramps, but invariably it was referred to as 'stomach trouble.' Q. Yes; stomach trouble,— the old stomach trouble? A. Yes; stomach trouble. He told me that in the Holmes Hotel, the first time I wanted to have a physician in the New York Life attend him. He said, 'No;' he knew just what to do for it. Q. Now, what did he say at that time about its duration? (Same objection.) The Court: That comes within the rule. He may answer to show knowledge that he had this trouble. A. He stated specifically that he had had it for a long time. Q. Now, did he state that at each of the times when you saw him in March, April, June, and October, 1891? A. Yes, sir; he stated literally that. It might have been the difference of a line, but he stated literally the same thing, because I continued the conversation, 'How are you feeling?' or 'How are you getting along?' or something of that sort."

The witness gave further testimony as to the assured's then physical condition, and his statements as to such condition, and there is no suggestion that he did not testify to all that the assured said to him. If it was error to sustain the objections to the original ques-

tions, the error was cured by subsequently permitting the witness to testify fully in the premises.     Merriam v. Pine City Lumber Co., 23 Minn. 314.

The defendant offered in rebuttal certain written statements made by the assured to the Keeley Institute relating to his intemperate habits.     The offer was objected to on the ground, among others, that it was not proper evidence in rebuttal, and the court sustained the objections.     This ruling is the basis of defendant's assignments 18 and 19.     The offered evidence, if admissible at all, should have been offered as original evidence in support of the defendant's main case in its defense.     It was not proper rebuttal evidence, and whether it should have been received at the time it was offered, bcause of the fact that the defendant did not discover its existence until after it rested its defense, was a matter resting in the discretion of the trial court.     It was not an abuse of the discretion to refuse to receive it.

Assignment 20 is not regardable.     The ruling complained of was correct for the reason that the question was not proper cross-examination.

2. Assignments of error 6 and 7 relate to the instruction of the court, and its refusal to instruct, as to the plaintiff's insurable interest in the life of the assured.

The policy was assigned by Rouse to the plaintiff as her interest might appear.     There is evidence in the case tending to show that the plaintiff held the note of her son-in-law, Woodruff, indorsed by Rouse before its delivery, for the sum of $10,000 loaned by her to Woodruff to enable him to purchase a one-half interest in Rouse's business, which he did.     The assignment in question was made to the plaintiff to secure this debt.     Subsequently Rouse repurchased the interest sold to Woodruff, and executed to him therefor 100 notes of $100 each, which Woodruff indorsed to the plaintiff, and his $10,000 note, with Rouse's indorsement thereon, was surrendered.

The defendant claims that this transaction constituted a payment of Rouse's original debt, which the policy was given to secure, and her insurable interest ceased.     The plaintiff claims that Rouse's liability on the original debt was never paid, but that the new notes were substituted in place of the old one.     The trial court instructed the jury, in substance, that the burden was upon the plaintiff to establish her claim that the new notes were taken as a substitute for

the old one of $10,000, and that she continued to hold the policy as security for the payment of the new notes up to the date of Rouse's death; that, if the plaintiff had failed in this, she could not recover; but, if the new notes were so substituted for the old one with the consent of the parties, then the plaintiff was entitled to recover, unless the defendant had established one or more of its affirmative defenses. If there is evidence in the case fairly tending to support this claim of the plaintiff, the court did not err, either in the instruction given, or in refusing the defendant's requested instruction.    We have examined the evidence on this point, and are of the opinion that the evidence justified the instructions of the court.

The court also instructed the jury that, if the plaintiff was entitled to recover anything, she was entitled to the face value of the policy, and interest, and refused the defendant's request to limit the amount of the recovery to the amount actually due on her notes at the commencement of this action, or at the time of trial.    This is the basis of the defendant's assignments of error Nos. 11, 12, and 13.

The instruction and ruling of the court were correct.    The amount of the plaintiff's notes against the assured exceeded the face of the policy.    But the defendant claims that, although the plaintiff established the fact that she held the policy to secure her debt, yet she was not entitled to recover the full amount of the policy, because the larger portion of her notes had not matured at the time of the trial. Whether the notes were due or not is no concern of the defendant. That is a matter to be adjusted between the plaintiff and the personal representatives of the deceased.    The cause of action is not on the notes, but on the policy.    That was due when the action was commenced, and the cause of action thereon against the defendant is single, and not divisible into as many separate causes of action as the plaintiff held notes against the assured.    The whole of the plaintiff's notes, due or to become due, were secured by the policy; and, when she collects the amount due from the defendant on the policy, questions as to its application or retention as security for notes not due, in place of the policy, do not interest the defendant.    Even if the amount of the plaintiff's notes was less than the face of the policy, she would be entitled to recover the full amount due on the policy, and would hold the surplus for the personal representatives of the assured.    Bliss, Ins. § 328.

The trial court also instructed the jury, in effect, that the presumption was, until the contrary was made to appear, that the policy was a valid legal instrument, and binding upon the defendant, and in the same connection said, "This is only one form of saying that the burden of proof rests upon the defendant, and not upon the plaintiff, to show that the policy is not a legal and binding contract, as it purports to be." The defendant excepted to so much of the instruction as stated that a presumption exists that the policy is a binding contract upon the defendant until the contrary appears. The charge, as a whole, was correct. The court stated to the jury exactly what he meant, by saying that the policy would be presumed to be valid until the contrary appeared. The burden was on the defendant to make the contrary appear. Chambers v. Northwestern M. L. Ins. Co., 64 Minn. 495, 67 N. W. 367.

Alleged errors Nos. 3 and 4 are to the effect that the court erred in refusing the defendant's first and second requests for instructions to the jury. These requests are practically the same, and refer to the claim of the defendant that assured gave false answers to questions put to him by its medical examiner as to the physicians he had consulted, and for what ailments.

For a clear understanding of the questions raised by these requests, it is necessary first to refer to the application of the assured, which contained the questions and answers upon which the requests were based. It was agreed by the assured that all the statements and answers made by him in his application, as well as those made to the defendant's medical examiner, were warranted by him to be true. There was no warranty that the answers were full and complete, but he did warrant that the answers, as given, were true. Under this agreement the assured was bound to answer accurately and truthfully only in so far as he undertook to answer, and his warranty could not be extended beyond his answers so actually given. If a question was not answered, there was no warranty, and, if only partially answered, the warranty cannot be extended beyond the answer, for it can only be predicated on the affirmation of something not true. Dilleber v. Home Life Ins. Co., 69 N. Y. 256.

The trial court instructed the jury in accordance with these views, the correctness of which is practically conceded by defendant; but it is claimed that they have no application to this case, because the as-

sured in his answers to the questions as to what physicians he had consulted, and what for, stated, in effect, that those named were the only ones that he had consulted; hence, if in fact he had consulted others, there was a breach of his warranty that those named were all of the physicians consulted. Even if this is a proper construction of the assured's answer, still, as we shall presently see, the rule we have stated is a conclusive answer to the claim that it was error to refuse the defendant's first and second requests.

The application consisted of two parts, one on each side of the same sheet of paper. The first part consisted of questions and answers to and by the assured. The second part was the report of the defendant's medical examiner, which also consisted of questions to and answers by him. Question No. 12, in part 1, and its answer, were substantially as follows: "For what have you sought medical advice during the past seven years? Dates? Duration? Physicians consulted? Answer. Malaria in Kansas, and la grippe,—first, 1888; second, 1891. One week, malaria. Dr. J. S. Oldham. La grippe, one week. Dr. Anderson." Under the head of "Remarks" the assured further stated as follows: "In 1891 had enlargement of liver, lasting four months. The principal effect was that of indigestion. Fully recovered." Subdivision No. 15 of the medical examiner's report contained the following question and answer: "When and for what has medical advice been sought within the last three years? Answer. Only as stated above."

The claim of the defendant is that this answer must be read into the answer to question No. 12, so that his answer as to what physicians he had consulted must be construed as if it read only Dr. Oldham in 1888, and Dr. Anderson in 1891. This is not the reasonable construction of these answers. The question to the medical examiner did not call for the names of the physicians consulted, but only for the time when, and the ailment for which, medical advice had been sought, and the answer, "Only as stated above," refers to his previous statements as to the subject-matter of the question, viz. for la grippe in 1891, and for enlargement of liver in 1891, resulting in indigestion.

But, as already suggested, the requests for instructions now under consideration were properly refused, upon the defendant's own

construction of these answers in the application.    As the requests
refer to the same subject, and the defendant claims that at least the
second one should have been given, it is only necessary to here quote
the second, which was in these words:

"If you find that James B. Rouse, in answer to the question put to
him by the medical examiner who made examination for insurance
with reference to the policy here sued on: '(a) For what have you
sought medical advice during the past seven years?    (b) Dates?    (c)
Duration?    (d) Physician consulted?'—stated that he had sought
medical advice of Dr. J. E. Oldham in 1888 for malaria, and of Dr.
Anderson in 1891 for la grippe, and made no further answer, and if
you further find that said Rouse had, at any time within seven years
to the said medical examination and his giving said answers, sought
medical advice from, and had been treated by, any other physician
or physicians than those named by him, you are instructed that the
facts so found by you vitiated and rendered void the contract of life
insurance sued on in this case, and your verdict will be for the de-
fendant."

It is apparent on the face of this request that it does not state the
law applicable to this case correctly; for, if the assured made "no
further answer" to the question referred to in the request, it fol-
lows that he did not answer that the physicians named were the only
ones whom he had consulted within seven years, and his warranty
could not be extended beyond his answer as given.    If, as the defend-
ant claims, the answer to the question to the medical examiner,
"When and for what has medical advice been sought within the last
three years?" "Only as stated above,"—so qualified the answer to the
question recited in the request that it was the equivalent of a state-
ment that he had sought within the last three years medical advice
only of the physicians named in his answer, the words, "No further
answer," should have been omitted, and the question of the medical
examiner, and answer thereto, in substance or effect, should have
been included in the request, and the time limit within which the
assured sought advice from other physicians should have been three,
instead of seven, years.    The words in the request, "and made no
further answer," negative the idea that the instruction rested on any
other answer except the one therein recited.

The requests were properly refused for both reasons which we have
suggested.

3. The remaining assignments of error meriting consideration relate to the sufficiency of the evidence to support the verdict. The volume of the evidence forbids any extended analysis of it.

The claim of the defendant is that the assured, prior to his application for insurance, was subject to the disease of dyspepsia; that he was a man grossly intemperate in his habits, addicted to both the drink and morphine habit, and was not, to his own knowledge, a fit subject for life insurance, and that this claim was established on the trial by clear and uncontradicted evidence; and that, therefore, the court erred in its refusal to dismiss the action at the close of the plaintiff's evidence, and also in refusing to direct a verdict for the defendant at the close of the evidence. If the defendant's premises are correct, its conclusion follows as a logical sequence. Its premises, however, rest upon the assumption of the absolute credibility of its witnesses, and that there was no contradictory evidence.

The subject of the inquiry related to the habit of eating opium or morphine, not to the proper occasional use of the drug, and to his habit or practice of immoderate drinking or overindulgence in liquors, and not to the moderate use of them. The defendant introduced evidence tending to show specific acts and declarations on the part of the assured, and other evidence as to his physical condition, which, if absolutely credible and uncontradicted, would justify, if not require, the jury to find that he was addicted to the drink and morphine habit, and did have the dyspepsia, when he made his application. But the credibility of several of the defendant's witnesses cannot be assumed, for the record discloses circumstances connected with them and their evidence which made the question of their credibility one for the jury. A large part of the evidence on the part of the plaintiff, of necessity, was general in its character, and consisted of the testimony of the wife of the assured, his intimate friends, and business and social associates, including doctors, and a druggist who knew him intimately, and his habits, tending to show the state of his health, and that he was not addicted to the drink or morphine habit. The plaintiff also gave evidence tending to contradict the testimony of some of the defendant's witnesses as to certain alleged specific acts of excessive drinking on the part of the assured, by showing that he was not present at the time and place stated.

The defendant claims that the general evidence we have referred to was purely negative, and must be disregarded, because it does not directly contradict its evidence as to specific acts of the assured. The evidence given by the plaintiff was certainly competent. It tended indirectly to contradict the evidence on the part of the defendant, for it tended to show that it was improbable that the assured conducted himself as charged, and was addicted to the drink and morphine habit. It was a question for the jury to determine whether a man could be addicted to these habits, and grossly intemperate, and his family and his intimate business and social associates not discover them. It cannot be assumed that he could have thus concealed these habits, if he in fact had them, for as surely as the dyer's hand is subdued to what it works in will the drink or opium habit proclaim itself in its victim's face and form. Outraged nature places an indelible and legible mark of identification upon the opium eater and the drunkard, and he cannot long conceal his identity.

We are of the opinion that the trial court did not err in refusing to take this case from the jury, and that the verdict is sustained by the evidence.

Order affirmed.