NATHANIEL PRICE v. STANDARD LIFE & ACCIDENT INSURANCE COMPANY.[1]

July 10, 1903.

Nos. 13,547—(186).

**Accident Insurance.**

Laws 1895, p. 400, § 20 (c. 175), modifies and controls the effect of statements, representations, and warranties contained in an application for accident insurance, and made part of a policy thereafter issued, so that misrepresentations made therein shall not be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with actual intent to deceive and defraud, or unless the matter misrepresented increased the risk of loss.

**Misrepresentations—Burden of Proof.**

Ordinarily it is for a jury to determine whether a misrepresentation has been made by the insured, whether it was material, whether it was made with actual intent to deceive and defraud, and whether it increased the risk of loss. The issues made by the pleadings in an action brought upon a policy, as to an intent to deceive and defraud, and as to a misrepresenta-

[1] Reported in 95 N. W. 1118.

tion which, it is alleged, increased the risk of loss, are largely dependent upon the nature and duration of the disease with which it is claimed the insured had been afflicted prior to the application for the policy, and on these matters the burden of proof is upon the defendant company.

*Held*, it was not conclusively established by the testimony in the case at bar that the statements, representations, and warranties of the insured, contained in his application and made a part of the policy, were untrue, in the sense that any misrepresentation made as to those matters was material or increased the risk of loss, and that on these questions, especially, the cause should have been submitted to the jury.

**Evidence of Disease.**

A register of patients, kept at a hospital, naming or pretending to name the disease with which a patient was said to be suffering, is not admissible in evidence to show and establish the nature of the disease.

**Attendance by Physician.**

The well-established rule seems to be that a physician may be called upon to testify to the simple fact that he has attended a certain person as his patient, and as to the number of his visits.

Action in the district court for Hennepin county by plaintiff as administrator of the estate of Margaret Price, deceased, to recover $5,000 upon a policy of accident insurance issued to Elijah Price during his lifetime. The case was tried before Elliott, J., who directed a verdict in favor of defendant. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Reversed, and new trial granted.

*John M. Rees,* for appellant.

*E. A. Prendergast* and *Cobb & Wheelwright,* for respondent.

COLLINS, J.

This action was brought upon an accident insurance policy issued to Elijah Price in March, 1901, for the term of one year, by defendant company. The premium was paid by him to the soliciting agent at the time the latter made out an application for the policy. December 15 of that year, Price was accidentally and fatally burned while attempting to light a fire by the use of kerosene oil. It is undisputed that he died as a result of injuries then received, and that they would have been fatal to any person. The defense interposed, with which

we are now concerned, was that Price untruthfully stated, represented, and warranted to the agent when applying for the policy, and to the company when it was issued, that "I have never had fits or disorders of the brain, vertigo' or hernia, or any bodily or mental infirmity or disorder," and also that "my habits of life are correct and temperate and I am in sound condition mentally and physically."

In the policy it was expressly stipulated that if either or any of said statements, representations, or warranties should be untrue in any respect, said document should be null and void. It was then alleged in the answer that at the time of making this application, and when the policy was issued, the habits of life of the insured were not correct or temperate; that he was not in sound condition, mentally or physically; that for a long time prior thereto he had been guilty of immoral practices, which had seriously impaired his physical and mental condition—all of which was well known to him, and which, as a consequence, rendered the policy null and void. And further, that each of these statements, representations, and warranties were false and untrue, and were made with the actual intent on the part of Price to deceive and defraud the company, and that each of the matters so misrepresented materially increased the risk of loss. At the conclusion of the trial the court below directed a verdict for defendant company, which was returned. This appeal is from an order denying plaintiff's motion for a new trial, and it will have to be reversed.

The court below erred in at least one of its rulings when receiving testimony, and it again erred when it held that the evidence was conclusive as against plaintiff's right to recover, and thereupon directed a verdict for defendant.

1. The policy is to be construed (and it was so held upon the trial) in connection with the provisions of Laws 1895, p. 400, § 20 (c. 175), which reads:

> "No oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the assured, or in his behalf, shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive and defraud or unless the matter misrepresented increased the risk of loss."

This statute modifies and controls the policy, and was designed to prevent unfair practices which had theretofore been adopted by a few life and accident insurance companies when seeking risks, through which they secured opportunities to litigate actions brought to recover in case accidents happened or death came to the insured. It must be construed with reference to the wrong it was intended to reach and to remedy, and its meaning is perfectly plain and easily comprehended. A misrepresentation or untrue statement made in the course of negotiations for insurance is not to be deemed material, nor shall it defeat or avoid the policy, unless made with actual intent to deceive and defraud, or unless it relates to some matter material thereto which has increased the risk of loss. If a misrepresentation is not made with an actual intent to deceive and defraud, if the risk of loss is not thereby increased, the policy cannot be defeated or avoided.

The law relating to this subject has been expressed, when a similar statute was under consideration, as follows: "This act has effected a change in life insurance contracts, and a very wise and wholesome change it is. It provides against the effect which formerly attached to warranties as to many frivolous and unimportant matters contained in the questions and answers set forth in the applications, which often were of no consequence as to the risk involved, but which the courts were obliged to uphold simply because they were warranties. This class of merely technical objections to recovery is now swept away. Ordinarily questions of good faith and materiality are for the jury, and, where the materiality of a statement to the risk involved is itself of a doubtful character, its determination should be submitted to the jury. But it was never intended by" this act, nor does it "assume to change the law in cases where the matter stated was palpably and manifestly material to the risk, or where it was absolutely and visibly false in fact." Hermany v. Fidelity, 151 Pa. St. 17, 24 Atl. 1064.

Ordinarily it is for a jury to determine whether a misrepresentation has been made, whether it was material, whether it was made with actual intent to deceive and defraud, and whether it increased the risk of loss. The evidence in a given case might easily be conclusive on some or all of these questions, but, unless it be, they should be submitted as are other questions of fact. The issues as to an intent to deceive and defraud, and as to a misrepresentation which it is claimed increased

the risk of loss, are largely dependent upon the nature and duration of the disease with which it is claimed the insured had been afflicted prior to the application, and as to these matters the burden of proof is on the defendant company. Chambers v. N. W. Mut. Life Ins. Co., 64 Minn. 495, 67 N. W. 367; Hale v. Life Ind. & Inv. Co., 65 Minn. 548, 68 N. W. 182.

The controversy at this trial seems to have been over a claim made by the defendant company that prior to the execution of the application, and for a period covering two years, at least, Price had been seriously ill with a disreputable disease. Testimony was introduced tending to show that he was treated for such an ailment by a local physician; that he then entered a hospital for treatment, and went to Hot Springs, Arkansas, at which place he spent several weeks, being continually under medical care. It was admitted at the trial that he was in the hospital, that he also visited Hot Springs, and that he received treatment for some malady at both places, but the nature thereof was in dispute. We need not go into the testimony, for it would incumber this opinion with a good deal of unpleasant and useless matter, and will content ourselves by saying simply that whether the insured was afflicted with the alleged disease was a vital question, and one particularly for the jury to determine on the testimony.

The nature and character of the disease for which he was treated were of great importance for the determination of whether there was a material misrepresentation, and whether it was made with actual intent to deceive and defraud must largely depend upon what the disease may have been, and when it happened. And to determine whether or not it increased the risk of loss, we should have to know its form and quality. Some diseases are of a virulent and lingering character, and the victim rarely regains perfect health, while others are of a temporary character, and the patient is restored to perfect physical condition. And it may safely be said that a man might be in a hospital, and might visit the Hot Springs, and be treated at either place, without incurring the charge of being afflicted with a very virulent and disgraceful disease, or with having any disease at all of a serious nature. We have yet to learn that there is anything uncommon or disreputable in taking medical treatment in the one, or in visiting the other.

We are unable to agree with the court below that there was no question of fact to be submitted to the jury, or that it was conclusively established that the statements, representations, and warranties of the insured that he never had any disorder of the brain, or vertigo, or any bodily or mental infirmity or disorder, and that his habits of life were correct and temperate, and that he was in sound condition, mentally and physically, were untrue, in the sense that any misrepresentation made as to those matters was material or increased the risk of loss, and therefore avoided the policy, or forfeited plaintiff's right to recover. Several issues of fact were presented, and should have been submitted to the jury.

2. At the trial an objection was made and overruled to the introduction in evidence by the defendant of the register of patients kept at the Northwestern Hospital, with the entries therein relating to the insured. These entries were made by the superintendent in charge, who was a female physician, in the usual course of business at the hospital, and showed when the patient entered, when he departed therefrom, and the nature of the disease from which he was said to be suffering. This superintendent produced the register, and testified that the entries concerning the insured were made after Dr. Kimball, the physician in charge, had observed the case long enough and knew sufficiently about the patient to state the kind of disease, and were based wholly upon information received by her from the doctor. The witness had no personal knowledge of the patient, and had no recollection of the case, apart from the record. Therefore the entries amounted to nothing more or less than what the superintendent wrote in the register what the attending physician told or reported to her concerning Price's illness.

To permit these entries to be introduced in evidence was to disregard in a very noticeable manner the rule forbidding the introduction of hearsay testimony, as well as the spirit of the statute which prohibits the examination of a physician as to certain matters without the consent of his patient (G. S. 1894, § 5662), although this last objection does not appear to have been made at the trial. The information communicated by Dr. Kimball to the superintendent of the hospital was acquired by the former while attending the patient, and was necessary to enable him to prescribe or act for him. Dr. Kimball would not have been

allowed to make any such disclosure, and the statutory restriction upon him could not be evaded by introducing in evidence testimony of a third party as to what the doctor said about the case. But the entries did not even rise to the dignity of a repetition of what the doctor said to a third party, for the superintendent remembered nothing, except that she made the entries. This testimony should have been excluded.

In view of another trial, it is not out of place for us to refer to the contention of plaintiff's counsel that it was prejudicial error upon the part of the court, and a violation of the provisions of section 5662, supra, to permit Dr. Steele to testify that Price consulted him, that the latter was then sick, and that the doctor prescribed for his ailment. At common law the prohibition which we find in the statute did not exist, and so physicians and surgeons were compelled to disclose, upon the witness stand, information acquired by them while attending their patients, as well as communications made by the latter. Although the statute differs somewhat in the several states, the general proposition is that it seals the lips of the physician, and prevents him from divulging in a court of justice information which he has acquired while in the necessary discharge of his professional duty, but it does not absolutely prohibit the examination of an attending physician as a witness. The well-established rule seems to be that a physician may be called upon to testify to the simple fact that he has treated, or attended a certain person as his patient, and as to the number of his visits. 3 Jones, Ev. § 778, and note citing cases. This doctrine, looking at the question in a logical way, comes very near trespassing on the statute, but we find no cases in opposition, and none have been cited by plaintiff's counsel.

Order reversed and new trial granted.