IDA C. RUPERT v. SUPREME COURT UNITED ORDER OF FORESTERS.[1]

February 24, 1905.

Nos. 14,198—(167).

**Life Insurance—Application.**

Where the answers to questions in an application for insurance and in statements of medical history are warranties, there can be no recovery on the policy if these answers are made by the insurer to affirmatively appear to be false.

**Insurance Contract.**

Parties to an insurance contract may by apt words make a fact material which would otherwise be immaterial, or make immaterial a fact which would otherwise be material.

**Ambiguous Terms.**

Complicated and ambiguous conditions and qualifications of such contract may involve the construction of the terms actually employed, so as to effectuate their purpose to protect both the insurer and the insured from fraud.

**Meaning of Words Used.**

The words used therein, having a narrower meaning appropriate to the purpose, will not be given their broadest import, having no reasonable reference to good faith or hazard, and leading to folly and demanding an impossibility.

**Questions in Application.**

When the questions propounded to an applicant are in such terms as to include trivial ailments and injuries unconnected with any specific disease, they should be interpreted as referring only to such ailments and injuries as affect the risk to be assumed, unless by express terms they preclude such interpretation.

**Answers in Application.**

Answers which are purely expressions of opinion are warranties of the bona fide belief and judgment of the applicant. Questions concerning the physical condition of the applicant, or anything that tends to shorten his life, do not invariably require absolute truth in answering.

**False Answer.**

An answer to a question concerning previous consultations of physicians which admits one examination, and omits others clearly proved, but does

[1] Reported in 102 N. W. 715.

not purport to be a full and complete reply to all questions in that connection, and is accepted in its obviously incomplete form, is not affirmatively shown to have been false, so as to prevent recovery on the policy.

Appeal by defendant from an order of the district court for St. Louis county, Ensign, J., denying a motion for judgment notwithstanding the verdict or for a new trial, after a trial and verdict in favor of plaintiff for $513.31. Affirmed.

*James Schoonmaker,* for appellant.

*John Jenswold, Jr.,* for respondent.

JAGGARD, J.

This action was brought to recover upon a certificate issued on the life of Emma Holmquist by the defendant, a fraternal benefit order. The insured was examined for insurance on April 13; her certificate, dated April 15, was countersigned by local officers and delivered on May 21; she died of consumption on September 9, 1903. The defense interposed both by pleadings and evidence was that the insurance was procured by false statements concerning health in the application and medical examination. The jury brought in a verdict for the beneficiary. Defendant moved for judgment notwithstanding the verdict, and, in case that motion was denied, for a new trial. From an order denying this motion, defendant appealed.

The court charged, in the language of all the defendant's own requests, in effect, that answers to questions asked were warranties, and not representations; more specifically, that, unless the applicant was in good sound physical health at the time of the application and delivery of the policy, there could be no recovery; that the exact and literal truth of the answers was a condition precedent to recovery herein; and that, if the applicant did not know the significance or severity of physical conditions and experiences, she was bound to state the exact and literal truth, and leave it to the defendant to determine, upon such statements, whether or not it would accept her application.

The real question which arose concerned the construction of the court upon the questions asked and the answers given.

In the early days of life insurance, the warranty was general, and guarantied sound mental and physical history and health. From time

to time, inquiries were added, addressed to specific diseases and conditions. The result has been to avoid many policies which might have been held valid under the earlier requirements. Vose v. Eagle, 6 Cush. 42. The obvious purpose of such interrogatories is to protect the insurer against fraud, and to enable it to exclusively determine what risks it will accept or reject. "The parties may by their contract make material a fact that would otherwise be immaterial, or make immaterial a fact that would otherwise be material." · Phoenix Life Ins. Co. v. Raddin, 120 U. S. 183, 189, 7 Sup. Ct. 500. If the wording is univocal, then the truth and not the materiality of the answers determines the rights of the insured. Anderson v. Fitzgerald, 4 H. L. Cas. 483.

In the light of this purpose, the courts have construed certain clear warranties to be material, and have accordingly held that affirmative proof of any false answers thereto forfeits all rights under the policy. Price v. Standard L. & A. Ins. Co., 90 Minn. 264, 95 N. W. 1118. It is cases of this kind which appellant has called to the attention of this court. Thus there can be no recovery upon a demonstrated violation of a warranty, in not truthfully stating the facts as to anterior rejection by other companies, Webb v. Security Mut. Life Ins. Co., 126 Fed. 635, 61 C. C. A. 383, notwithstanding a state of facts concerning conditional delivery of application. Dimick v. Metropolitan, 69 N. J. L. 384, 55 Atl. 291; Moore v. Mutual, 133 Mich. 526, 95 N. W. 573; Jeffries v. Life Ins. Co., 22 Wall. 47; Anderson v. Fitzgerald, supra. Or previous consultations with physicians. Flippen v. State, 30 Tex. Civ. App. 362, 70 S. W. 787, collecting cases at page 788; Hubbard v. Mutual Res. Fund Life Assn., 100 Fed. 719, 40 C. C. A. 665; Moore v. Mutual, supra. Or age of applicant. Ætna Life Ins. Co. v. France, 91 U. S. 510. Or whether applicant was married or not. Jeffries v. Life Ins. Co., supra. Or that applicant had a rupture. Ætna Life Ins. Co. v. France, 91 U. S. 512. Or whether or not he had been an inmate of a hospital. Farrell v. Security Mut. Life Ins. Co., 125 Fed. 684, 60 C. C. A. 374. Or as to limitation to a recent inmate. Dimick v. Metropolitan, supra. Or that applicant followed a prohibited occupation. Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330. Thus there are many instances in which no construction of the wording of questions and answers was found necessary.

But there are also many instances in which courts may properly see

that complicated and ambiguous qualifications and conditions of applications and policies do not operate as a snare and sacrifice form for justice. Jeffries v. Life Ins. Co., supra. The purpose of warranties is to prevent, and not to perpetrate, fraud. It would be obviously unreasonable and unjust to allow insurance companies to habitually accept "average risks" by lowering the medical examination to that level, and then to permit them to defeat their policies, as occasion might arise, by insisting that the insured had failed in his insurance of the truth of some insignificant detail, having no bearing on good faith or on hazard, or of the conformity of an honest opinion with fact.

A construction of this application was made by the court. Its necessity will appear from a general consideration of its provisions, and more specifically from the objected part of the charge. The number of questions asked in the application here was one hundred twenty one. More than forty of these were inquiries as to whether or not she had ever had diseases. The investigation extended to her family and connections, lineal and collateral. The applicant was required to warrant only her good faith as to the family history, but, apart from construction, was made to guaranty opinions as to herself which no candid physician would be likely to assert with positiveness, and to insure against objective conditions which the company's own expert was unable to detect. Invariably, interrogatories of this kind are a medley of conclusions and facts. The answers called for are in part expressions of scientific opinion, and in part narrations of individual experiences. Upon its face, such an application requires the exact literal truth as to ailments, the precise nature of which an operation in major surgery might not reveal, and which only an autopsy could discover. The questions are not scientifically arranged, so that the classes of diseases are mutually exclusive. A number of them are but big bags to put many diseases in. Justice Harlan in Connecticut Life Ins. Co. v. Union Trust Co., 112 U. S. 250, at page 257, 5 Sup. Ct. 119, at page 123. It would require dialectical skill of no mean order to consistently interpret, and technical knowledge of no inconsiderable extent to accurately answer, all that is thereby required.

The construction in this case, [derived from an examination of the charge as a whole,] was, in the court's own apt and exact words, as follows:

These requests [viz., those just referred to, which held the answers to be warranties, not representations] are to be taken in connection with the instructions that the court gave you a moment ago. When questions propounded to an applicant as to her physical condition are in such terms as to include trivial ailments and injuries, unconnected with any specific disease, they should be interpreted as referring only to such ailments and injuries as affect the risk to be assumed, unless they are in words to preclude such interpretation. The presumption is that trivial ailments and injuries are not within the contemplation of the parties, and the words directing attention to them are not asked with a view or purpose of ascertaining the existence of the same, but what is the general condition of the health of the applicant.

This was specifically applied by the court to bronchitis, shortness of breath, spitting of blood, and chronic cough.

This restricted construction was correct. "All words, whether they be general in deeds or statutes or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of the matter and the persons." Bacon, Law Max. Reg. 10; May, Ins. 183.

To construe this application in accordance with defendant's contention, so as to give its words their broadest import, although they are equally consonant with a sense limited to its purpose, leads to folly and demands the impossible. Witness its effect upon the failure of the applicant here to answer questions of pure fact complained of: "Number 20. Shortness of breath." This the applicant should answer by giving a list including all the times shortness of breath came from violent blows or fright or exercise. If she did not remember and correctly state the number of times she ran rapidly upstairs or to catch a street car, she could not recover. "21. Spitting of blood." If the applicant did not enumerate the number of teeth she had had pulled, she could not recover. Of negative answers to questions concerning existence of "open sore," and the like, Clark, J., in Home v. Gillespie, 110 Pa. St. 84, 1 Atl. 340, said: "These questions, it must be admitted, are in the most general terms, and if they are to be so read and understood, they are not only unreasonable, but absurd. A slight cutting of the finger with a penknife may for a time produce both an open sore and a swelling; the mere indisposition arising from cold is

an illness; the stubbing of a toe is an injury; and the most trivial operations with hand or knife may be said to be surgical. It would be impossible for a person of mature years to remember, and absurd for the association to inquire, as to the common and trivial ailments or injuries he may have suffered from his earliest childhood, and it is unreasonable to suppose that these were in contemplation of the parties." The requirement of absolute truth, irrespective of its significance or its relevancy to risk, constitutes an impossible demand on human memory. Insurance Co. v. Wilkinson, 13 Wall. 222, 230.

The charge of the court formulated pertinent rules of law in harmony with the weight and tendencies of authorities. Chambers v. Northwestern Mut. Life Ins. Co., 64 Minn. 495, 499, 67 N. W. 367; Hubbard v. Mut. Res. Fund Life Assn., 100 Fed. 719, 40 C. C. A. 665, adverting to Jeffries v. Life Ins. Co., and like cases; and to Connecticut Life Ins. Co. v. Union Trust Co., and like cases; Miller v. Mutual, 31 Iowa, 216; Wilkinson v. Connecticut, 30 Iowa, 119; Insurance Co. v. Wilkinson, supra. And see Chinnery v. U. S., 15 App. Div. 515, 44 N. Y. Supp. 581; Mutual v. Wise, 34 Md. 582. And see Mattson v. Modern Samaritans, 91 Minn. 434, 98 N. W. 330, as to test of materiality.

Appellant calls attention to one question and answer with respect to which he made no specific request to charge.

> 49. Have you consulted or been attended by a physician during the last five years for a personal ailment or disease? Ans. Bilious attack. If so, for what? State nature, date, cause, duration, and effects. (No answer.)
>
> 50. Give name and address of physician or physicians. Ans. Dr. McClain, Fergus Falls.

The testimony showed conclusively that she had consulted other physicians during that period. These questions were ineptly asked and ineptly answered. Apart, however, from the failure of the appellant to request a charge with respect thereto, the partial answer of the applicant, which was true as far as it went, was accepted by the defendant with the blank space to one question not filled out. Both on facts and on the presentation of the legal question upon the record for review, this case is obviously different from those cases just referred to, which hold that a clear, untruthful answer to such a question forfeits the con-

tract. This answer does not prevent recovery. Hale v. Life I. & I. Co., 65 Minn. 548, 68 N. W. 182.

The statements with respect to which the court was specifically asked to charge and did charge were numbered 2, 19, 20, 21, 22, 23, and 121. Of these, only 20 and 21 are, properly speaking, questions of pure fact, exclusive of opinion, namely: 20. Q. Shortness of breath? A. No. 21. Q. Spitting of blood? A. No. The charge of the court was correct as to these statements, in the light of previous consideration herein. A question essentially similar to question 21 received identical answer in Dreier v. Continental Life Ins. Co. (C. C.) 24 Fed. 671. The court held that "there is no warranty in this case that the insured never had spitting or raising of blood, but only that he did not have the complaint of spitting or raising of blood; equivalent to a warranty that he had not had blood spitting in such form as to be called a disease, disorder, or constitutional vice." And see Campbell v. New England, .98 Mass. 381. In Chattock v. Shawe, 1 Moody & Rob. 498, with respect to an applicant's answer that he had not been afflicted with fits, Lord Abinger, C. B., said: This means not that he "never accidentally had a fit, but that he was not  *  *  *  a person habitually or constitutionally afflicted with fits."

Statements numbered 2, 19, 23, and 121 involve expert opinion. No 22 also implies a conclusion. It accords with both reason and authority that, as to such matters of opinion, the answers will be deemed a warranty of only the bona fide belief and judgment of the applicant. Dimick v. Metropolitan, 69 N. J. L. 384, 55 Atl. 291, collecting authorities at pages 294, 295. The correctness of the submission to the jury of these statements by the court in this case will clearly appear upon more detailed examination:

No. 2 declared that the applicant was in good, sound physical health. Of such a statement, Lord Mansfield said: "Such a warranty could never mean that a man has not in him the seeds of some disorder. We are all born with the seeds of mortality in us. A man subject to the gout is a life capable of being insured, if he has no sickness at the time to make it an unequal contract." Note to Ross v. Bradshow, 1 Wm. Blackstone, *313. And see Jeffrey v. United Order, 97 Me. 176, 53 Atl. 1102, considering many cases.

As to No. 19: "Q. Bronchitis? A. No"—there was practically no testimony, except that which was relied upon to prove No. 23, namely: "Consumption? A. No." This very statement illustrates the dilemma into which the Socratic method can unfairly put an applicant. The primary distinction between this case and Vose v. Eagle, 6 Cush. 42, upon which appellant properly places much reliance, is that in the Massachusetts decision the arbitrators to whom the case was referred found the facts against, whereas here the jury found them for, the applicant. In both cases the court held the statements to be warranties. Moreover, the testimony as to facts, and the issues as presented upon the record of exceptions and assignments of error, are essentially different.

No. 121 was as follows:

> Q. Is there anything, to your knowledge or belief, in your physical condition, family or personal history, or habits, tending to shorten your life, which is not distinctly set forth above? A. No.

In Watson v. Mainwaring, 4 Taunt. 763, Chambers, J., said: "All disorders have more or less a tendency to shorten life—even the most trifling; as, for instance, corns may end in a mortification. That is not the meaning of the clause. If dyspepsia were a disorder that tended to shorten life, within this exception, the lives of half the members of the profession of the law would be uninsurable."

These statements of bare facts and of facts and opinions were properly submitted to the jury, because, also, of the nature of the testimony introduced. The jury was entitled to judge of the credibility of witnesses, to ascertain the times when various essential facts occurred (especially, for example, the time of spitting blood), to consider the extremely favorable report of defendant's physician (especially as to failure to find evidence of consumption), and to determine the bearing and effect of a mass of relevant testimony upon the truth of these statements of the applicant. Price v. Standard Life & Accident Co., 90 Minn. 264, 269, 95 N. W. 1118; Hale v. Life I. & I. Co., 65 Minn. 548, 560, 68 N. W. 182.

The conclusions here reached cover what the defendant refers to as "the substantial points on the merits of this case," and essentially de-

termine some other assignments of error, including the claim that the applicant failed to notify the defendant of deterioration in her health after her application required by the by-laws. The appellant assigned other errors which are not material to this decision.

Order affirmed.